**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PROGME CORPORATION,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **NO. 17-1488** |
| | : | |
| **COMCAST CABLE** | : | |
| **COMMUNICATIONS LLC, and** | : | |
| **NBCUNIVERSAL MEDIA, LLC,** | : | |
| **Defendants.** | : | |

**McHUGH, J.**                                              **NOVEMBER 3, 2017**

## MEMORANDUM

This case concerns a patent issued to Progme Corporation, a Michigan business that designs methods for enhancing television programming delivered through cable networks. The patent claims methods for generating and transmitting computer code that allows end users to print or capture content related to advertisements or cable programming, and do so either to paper, a computer file, or an electronic display. In 2015, Plaintiff Progme Corporation filed a complaint against seventeen defendants in the Eastern District of Michigan. Plaintiff subsequently dismissed with prejudice its claims against all defendants but Comcast Corporation, and filed an Amended Complaint against the two remaining defendants, NBCUniversal Media, LLC and Comcast Cable Communications, LLC, alleging that they have acted jointly or individually to use infringing code and transmission practices to enhance their network programming. Following transfer of the case to the Eastern District of Pennsylvania, Defendants have filed motions to dismiss Plaintiff's claims. For reasons that follow, I grant NBCUniversal Media, LLC's Motion to Dismiss entirely, and grant in part Comcast Cable Communications,

LLC's Motion to Dismiss as to Counts III–VI, and all claims of indirect infringement and joint infringement.

## I. Background

In 2014, the U.S. Patent Office issued U.S. Patent No. 8,713,425 [hereinafter "the '425 Patent"] to Plaintiff Progme Corporation. The Patent claims a method that generates hyperlinks allowing an end user to print or capture content related to movies, television shows, and streamed videos. The Patent identifies three main objectives: (1) "integrate hyperlinking to and printing hyperlinked content related to program material"; (2) "combine in the same hyperlink address string hyperlinking attributes and values and printing attributes and values"; and (3) enable hyperlinking to predetermined program material "to print pre-defined printable output" of the hyperlinked content. In short, Plaintiff's claimed method enables a user to print or capture content linked to various visual media. For example, the method allows an individual watching a television show to print a coupon for a product presented during an advertising segment.

In November 2015, Plaintiff filed a Complaint for Patent Infringement in the Eastern District of Michigan against seventeen defendants. Less than a month later Plaintiff voluntarily filed a Notice of Dismissal, with prejudice, against all defendants except Comcast Corporation. Plaintiff later filed an Amended Complaint. While the initial complaint named NBCUniversal, Inc. as a defendant, and Plaintiff voluntarily dismissed claims against NBCUniversal, Inc. with prejudice, the Amended Complaint added NBCUniversal Media, LLC [hereinafter "NBCU"] as a defendant. In its Amended Complaint, Plaintiff removed Comcast Corporation from the case caption and instead named Comcast Cable Communications, LLC [hereinafter "Comcast"] as a defendant. After Comcast and NBCU filed motions to dismiss, and Progme filed response briefs

and a motion for leave to file a second amended complaint, this case was transferred to the Eastern District of Pennsylvania.

The transfer order deemed all other pending motions moot, including Defendants' motions to dismiss and Plaintiff's motion for leave to file a second amended complaint. Instead of refiling its mooted motion for leave to file a second amended complaint, Plaintiff sought leave to file a third amended complaint, which I denied.

Plaintiff claims that Defendants Comcast and NBCU, either "jointly, severally, or alternatively in their respective cable television networks, services and transmission systems," have infringed the '425 Patent. *See, e.g.*, Pl.'s First Am. Compl. ("FAC") ¶¶ 53–56, 60, ECF No. 1-13. Plaintiff sets out six separate counts of infringement in its First Amended Complaint. Counts I and II address Comcast's alleged use of "Comcast Message Bus" or "Cloud Message Bus" [hereinafter "CMB"] code across a series of "servlets," which replicate "print()" or "println()" statements of the "PrintWriter method" protected under the '425 Patent. *See id.* ¶¶ 41, 42, 44. In Count I, Plaintiff cites the individual "servlets" that allegedly use infringing Java code, *see id.* ¶ 42, and displays the code used on each allegedly infringing servlet, *id.* ¶¶ 60–72. Count II alleges more specifically that defendants infringe the patent by "encoding and transmitting" a PrintWriter "hyperlink address string in conjunction with program signals," as well as leasing or selling a "transmission service" that employs the PrintWriter method. *Id.* ¶¶ 75, 77. In support of its motion to transfer venue, Comcast submitted statements from company engineers, who declared that they controlled the use of CMB software, which they maintain electronically in a "server that is accessible in Comcast Cable's offices located in Philadelphia, PA." Ex. B, Def. Mot. Transfer, ¶¶ 3–9, ECF No. 1-35; Ex. C, *id.*, ¶¶ 3, 9.

Count III alleges facts relating to the infringing activity of a "public class HConfig" that generates PrintWriter statements with an "out parameter" for displaying "dynamically generated information" on a HAVi screen.  FAC ¶ 84.  Count IV alleges facts relating to a "jdwpGen node" that generates a "PrintWriter hyperlink address string" that performs "remote java debugging."  *Id.* ¶ 91.  Count V alleges facts relating to a "public class MC" that generates and transmits, in conjunction with program signals, a "hyperlink address string having a pw parameter structured as a PrintWriter method for transport stream directory and file tree building."  *Id.* ¶ 98.  Count VI alleges facts relating to an "upnp Home Network node" that generates a "PrintWriter hyperlink address string" that has "a ps (PrintStream) parameter."  *Id.* ¶ 107.  In Counts III–VI, Plaintiff presents "program material code" used by each instrumentality that allegedly infringes on the '425 Patent.  *See id.* ¶¶ 88, 95, 103, 111.

Plaintiff alleges that infringement of the '425 Patent may have occurred in any of three, or possibly four, ways.  Plaintiff alleges that Defendants infringe the patent directly.  Plaintiff also alleges indirect infringement in the form of inducement or contributory infringement.  In responding to Comcast's Motion to Dismiss, Plaintiff has also suggested that the Complaint encompasses allegations that Comcast is liable for joint direct infringement that NBCU and Comcast have allegedly carried out together.

## II.  Standard for a Motion to Dismiss

The Supreme Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), govern the pleading standards for claims of direct and indirect infringement.  A complaint need not present "detailed factual allegations" to survive a motion to dismiss.  But it must present "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

A complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. As the Court

explained in *Iqbal*, a plaintiff may state a plausible claim by pleading "factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678.[1]

## III. NBCUniversal Media, LLC's Motion to Dismiss

Defendant NBCU raises two arguments in support of its motion to dismiss. First, NBCU

contends that Plaintiff's earlier voluntary dismissal of "NBCUniversal, Inc." with prejudice

precludes all claims that Plaintiff now asserts against NBC Universal Media, LLC. Second,

NBCU contends that Progme's complaint fails to allege a plausible claim of direct and indirect

infringement of the '425 Patent. Because NBCU's res judicata defense is sufficient to bar

Plaintiff's present claims, I will only address this argument.

Analysis of NBCU's res judicata defense begins with a choice of law question, though

one with little bearing on the outcome of this case. Plaintiff filed its initial complaint, which

included seventeen defendants, in the Eastern District of Michigan. *See* Pl.'s Compl., ECF No.

1-1. Plaintiff voluntarily dismissed, with prejudice, all defendants in the initial complaint except

Comcast. Pl.'s Notice of Dismissal of Defs. and Action Against Defs. Pursuant to FRCP

41(a)(1)(A)(i), ECF No. 1-6. Plaintiff subsequently filed its First Amended Complaint, which

added NBCUniversal Media, LLC as a defendant. Pl.'s First Am. Compl., ECF No. 1-13.

---

[1] Until recently, under Rule 84 of the Federal Rules of Civil Procedure, Form 18 in the Appendix to the Rules sufficed to state a patent claim. Even after the Supreme Court's holdings in *Twombly* and *Iqbal*, the Court of Appeals for the Federal Circuit held that Form 18 continued to set forth the requirements for pleading. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1357 (Fed. Cir. 2007); *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283 (Fed. Cir. 2013).

But since the abrogation of Rule 84 and Form 18 in 2015, district courts have reasoned that pleading standards of *Iqbal* and *Twombly* necessarily now apply in cases of direct patent infringement. *See, e.g.*, *Robern, Inc. v. Glasscrafters, Inc.*, 206 F. Supp. 3d 1005, 1011 (D.N.J. 2016*)*; *RAH Color Techs. LLC v. Ricoh USA Inc.*, 194 F. Supp. 3d 346, 350 (E.D. Pa. 2016) (Joyner, J.).

In evaluating the preclusive effect of a federal court's prior judgment, the Third Circuit has held that federal preclusion law applies. *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 144–45 (3d Cir. 1999); *Doe v. Hesketh*, 828 F.3d 159, 171 (3d Cir. 2016). Here, because Plaintiff filed its Notice of Dismissal in the Eastern District of Michigan, I will apply federal preclusion law of the Sixth Circuit. The Sixth Circuit provides that *res judicata* will preclude a party from asserting a claim when (1) a court of competent jurisdiction has reached "a final decision on the merits"; (2) "[t]he second action involves the same parties, or their privies, as the first"; (3) "[t]he second action raises an issue actually litigated or which should have been litigated in the first action"; and (4) "[a]n identity of the causes of action" exists between the first and second actions. *Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992).[2]

Plaintiff challenges NBCU's *res judicata* argument on two grounds. First, Plaintiff contends that its voluntary dismissal of NBCU was not a final judgment on the merits. This argument plainly fails. The Federal Rules of Civil Procedure provide that a plaintiff may "dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment . . . ." Fed. R. Civ. P. 41(a)(1)(A)(1). Rule 41 explicitly provides that a voluntary dismissal by the Plaintiff is "without prejudice," with a critical qualification: "unless the notice or stipulation states otherwise." Fed. R. Civ. P. 41(a)(1)(B).[3] Plaintiff voluntarily dismissed its initial complaint against "NBCUniversal, Inc." with prejudice. By its very nature, a dismissal with prejudice means that

---

[2] The Third Circuit uses the same res judicata standard as the Sixth Circuit, although it sets forth the test in three rather than four steps. *Duhaney v. Attorney Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010); *Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir. 1985).

[3] In this regard, Rule 41 is consistent with the Restatement (Second) of Judgments § 20(1)(a)–(b).

it is final and binding. The Sixth Circuit has held that a plaintiff's stipulation to voluntarily dismiss a claim with prejudice precluded the plaintiff from bringing a subsequent action based on the same claim. *United States v. One Tract of Real Property,* 95 F.3d 422, 426 (6th Cir.1996). *See also Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 542 (6th Cir. 2001) ("A voluntary dismissal with prejudice operates as a final adjudication on the merits and has a res judicata effect."). Other federal courts have agreed that a dismissal by notice, made with prejudice, operates as an adjudication on the merits, a disposition that carries a preclusive effect. *See Derr v. Swarek*, 766 F.3d 430, 440–41 (5th Cir. 2014) ("If the plaintiff chooses to extinguish his rights forever he is entitled to do so, and the defendant will reap the benefit of a res judicata bar to any attempt by the plaintiff to re-litigate the dismissed claims."); *accord Vacanti v. Apothaker & Assocs., P.C.*, No. 09-5827, 2010 WL 4702382, at *4 (E.D. Pa. Nov. 12, 2010) (concluding that a "voluntary dismissal with prejudice operates as a final judgment on the merits" for purposes of res judicata); *Hirschensohn v. West*, No. 772-1990, 1993 WL 813514 (D.V.I. Nov. 29, 1993) (same).

In response, Plaintiff resorts to linguistic sleight of hand based upon docketing technicalities. Plaintiff argues that, because the present action falls under the same case number as the action Plaintiff voluntarily dismissed, the earlier disposition "was not rendered in a 'prior action.'" Pl.'s Resp. Br. 5, ECF No. 28. To credit Plaintiff's theory would be to elevate form over substance and render meaningless the term "with prejudice." Plaintiff dismissed all defendants but Comcast with prejudice. The system of numbering by which the court tracks cases does not create its own separate legal reality or alter substantive rights.

Second, Plaintiff argues that the second action does not involve the same parties or their privies, arguing that NBCUniversal Media, LLC, is not the same party as, or a privy of,

"NBCUniversal, Inc.," the defendant named in the first action. In advancing this argument, Plaintiff seeks to benefit from a formatting error in the original complaint. Plaintiff named "NBCUniversal, Inc." as the initial defendant. In fact, the State of Delaware registered the incorporation of the entity as "NBC Universal, Inc.," and Plaintiff omitted the space between NBC and Universal in its initial complaint. Plaintiff's attorney, David Reams, has filed an affidavit stating that the spelling "NBCUniversal, Inc." in Plaintiff's Notice of Dismissal was not the result of a "clerical error, mistake or misnomer," Affidavit of David A. Reams, ECF No. 28-3, and argues that the earlier dismissal is meaningless because he had sued a "nonentity." Pl.'s Resp. Br. 1, ECF No. 28. Plaintiff contends that it intended to dismiss with prejudice only a non-entity, and therefore may not now be precluded from suing a genuine legal entity. This argument would have me ignore that upon first filing, Plaintiff successfully located the address of the purported "non-entity," "NBCUniversal, Inc.," certified that it served a summons and complaint upon NBCUniversal, Inc. at that address, and subsequently served its Notice of Dismissal to NBCUniversal, Inc.[4] The address Plaintiff used for serving NBCUniversal, Inc. is the same address as used for NBCUniversal Media, LLC. In substance, Plaintiff acted as if it was proceeding against NBC Universal, Inc. Plaintiff's argument clearly has no merit.[5]

Plaintiff's dismissal of NBC Universal, Inc. in the first action is binding as to NBCUniversal Media, LLC, because Universal "Inc." is the predecessor to Universal "LLC." In 2011, NBC Universal, Inc. filed papers with the Delaware Secretary of State, converting itself

---

[4] Plaintiff's Notice of Dismissal lists "NBCUniversal, Inc." as having an address, for purposes of service, at 30 Rockefeller Plaza, New York, NY 10112. ECF No. 1-4.

[5] Plaintiff also suggests that by giving preclusive effect to its dismissal of "NBCUniversal, Inc.," and thereby treating the prior dismissal as operating against a viable entity, this court would disturb its decision to voluntarily dismiss a "non-entity." Pl.'s Resp. Br. 5–6, ECF No. 28. This, again, is a meritless argument.

from a corporation to a limited liability company called NBC Universal Media, LLC, which later changed its name to NBCUniversal Media, LLC. The State of Delaware considers a converted entity to be the same entity as the original. 8 Del. C. 266(h). NBCUniversal Media, LLC is clearly a successor in interest to NBC Universal, Inc., and thus a privy of NBC Universal, Inc. for purposes of asserting res judicata. *See In re Montgomery Ward, LLC*, 634 F.3d 732, 737 (3d Cir. 2011); *Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 481 (6th Cir. 1992) ("Res judicata also bars those in privity with parties from bringing suit later. Privity in this sense means a successor in interest to the party . . . .").

Plaintiff does not raise any arguments relating to the identity of claims between the first and second actions. Nor does Plaintiff dispute whether the second action raises an issue that was or should have been litigated in the first. It is clear that the first and second actions arose from the same claims of patent infringement and involve the same issues. I must therefore dismiss all claims against Defendant NBCUniversal LLC as barred by res judicata.

## IV. Comcast Cable Communications, LLC's Motion to Dismiss

Plaintiff's Amended Complaint alleges that Comcast has directly infringed the '425 Patent, as well as indirectly infringed the patent through inducement and contributory infringement. Plaintiff also asserts that Comcast is liable as a joint infringer for performing part of a series of steps necessary to infringe the '425 Patent, an argument raised in response to Comcast's Motion to Dismiss. Finally, in addition to compensatory damages, Plaintiff requests treble damages under 35 U.S.C. § 284 for willful infringement. For the reasons that follow, I grant Comcast's motion to dismiss as to Plaintiff's claims in Counts III–VI, and all claims of induced infringement, contributory infringement, and joint infringement, including those alleged in Counts I and II.

**A.  Plaintiff's Direct Infringement Claims**

Plaintiff claims that Comcast has directly infringed on the '425 Patent.  The direct infringement of a patent occurs when a party, without authority, "makes, uses, offers to sell, or sells any patented invention, within the United States . . . ."  35 U.S.C. § 271(a).  A patentee may prove a direct infringement under § 271(a) either by (1) demonstrating specific instances of direct infringement; or (2) showing that an accused device necessarily infringes on the patent.  *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).

In Counts I and II, Progme has stated a claim of direct infringement against Comcast.  Although Comcast has not moved to dismiss Plaintiff's direct infringement claims in Counts I and II, I nonetheless address them because the allegations there relate to the other counts, and the specificity of the pleading there serves as a useful point of comparison with the conclusory allegations in other counts.  In Count I, Plaintiff alleges that Comcast and NBCU use "servlets," each "defined by certain Java code 'open-sourced' at github.com."  Plaintiff alleges that the Java code "comprises Comcast Message Bus or Cloud Message Bus [hereinafter "CMB"] code . . . ."  FAC ¶ 41.  Plaintiff alleges that Comcast uses CMB code across a series of "servlets," which replicate "print()" or "println()" statements of the "PrintWriter method" protected under the '425 Patent.  *See id.* ¶¶ 41, 42, 44, ECF No. 1-13.  In Count I, Plaintiff identifies the individual "servlets" that allegedly use infringing Java code.  *Id.* ¶ 42.  Plaintiff also quotes at length the code used on each allegedly infringing servlet.  *Id.* ¶¶ 60–72.  Count II alleges more specifically that Defendants infringe the patent by "encoding and transmitting" a PrintWriter "hyperlink address string in conjunction with program signals," as well as leasing or selling a "transmission service" that employs the PrintWriter method.  *Id.* ¶¶ 75, 77.

Critical to its pleadings in Count I and II, Plaintiff has cited factual information that connects Comcast to the allegedly infringing "servlets" and CMB code. In support of its claims, Plaintiff cites declarations Comcast relied on in its Motion to Transfer this case from the Eastern District of Michigan to the Eastern District of Pennsylvania. Pl.'s Supplemental Resp. Def.'s Mot. Dismiss 3–4, ECF No. 30. Kenneth Failbus, Development Operations and Build Release Engineer for Comcast, stated that his duties include "managing and controlling the release of hardware and software products developed and used by Comcast," and "was responsible for the deployment of the Comcast Message Bus (CMB) software in 2013." Ex. B, Def.'s Mot. Transfer ¶¶ 1, 3, 9, ECF No. 1-35. John McCann, Executive Director for Product Engineering at Comcast, stated that he "was involved in the architectural planning and implementation of the [CMB] in Comcast's cable services," adding that "[a] significant amount of the work in designing, producing, and implementing the CMB occurred in Comcast's Philadelphia, PA, office." Ex. C, Def.'s Mot. Transfer, ¶¶ 1, 3, 9, ECF No. 1-35. These declarations offer factual material connecting Comcast to an instrumentality, namely, the Comcast Message Bus, that allegedly infringes on the '425 Patent.

In contrast, Counts III through VI do not benefit from any similar facts that tie the other allegedly infringing instrumentalities to Comcast. In Count III, Plaintiff states that defendants are infringing the '425 Patent "by public class HConfig generating and transmitting in conjunction with program signals . . . PrintWriter statements having a[n] out parameter for generating dynamically generated information regarding a given HAVi screen display or composition." FAC ¶ 84. This allegation requires the Court to infer that Comcast uses or controls the "public class HConfig." Plaintiff further alleges, "Via said public class HConfig, Defendant Comcast generates print() or println() statements of the PrintWriter method . . . ."

Plaintiff's use of the word "via" is too vague. Other than stating that Comcast generates PrintWriter statements "via" the "public class HConfig," Plaintiff alleges no other fact to support the assertion that Comcast uses the "public class HConfig" at any stage in the delivery of its services. Assuming the HConfig generation employs code that infringes on the '425 Patent, Plaintiff does not allege facts that indicate a linkage between Comcast and the instrumentality.

The same deficiency runs through Counts IV and VI. In Count IV, Plaintiff alleges that Defendants infringe on the '425 Patent "by a jdwpGen node generating and transmitting in conjunction with program signals representative of predetermined program material said PrintWriter hyperlink address string . . . ." FAC ¶ 91. In Count V, Plaintiff alleges that Defendants infringe the '425 Patent "by public class MC generating . . . [a] PrintWriter hyperlink address string having a pw parameter . . . for transport stream directory and file tree building." FAC ¶ 98. In Count VI, Plaintiff alleges that Defendants infringe the '425 Patent "by an upnp Home Network node generating and transmitting . . . [a] PrintWriter hyperlink address string structured as a PrintWriter method having a ps (PrintStream) parameter." FAC ¶ 106. In Counts IV–VI, like in Count III, Plaintiff alleges that "[v]ia" each alleged instrumentality, Defendants generate "print() or println() statements of the PrintWriter method." FAC ¶¶ 92, 100, 108. In Count IV, Plaintiff adds that defendants use the "print() or println() statements" to "remotely debug program signals." FAC ¶ 92.

By structuring its pleadings this way, Plaintiff has not shown Comcast to have any connection to the allegedly infringing instrumentalities. In sum, Plaintiff has offered only the bare assertion that Defendant uses code that allegedly infringes on the '425 Patent. Plaintiff contends that the volumes of code documented in the complaint "specifically allege the generating means and encoding/transmission means for generating and transmitting the computer

code in [Defendants'] respective cable television networks, services and transmission systems." Pl.'s Sur-Reply to Def.'s Mot. Dismiss 3–4, ECF No. 33. That may be true, but Plaintiff still has not alleged facts that connect Defendants with the alleged means of generating and transmitting the computer code.

**B. Plaintiff's Indirect Infringement Claims**

Plaintiff also asserts indirect infringement claims against Comcast. A claim of indirect patent infringement may occur in the form of inducement or contributory infringement. Plaintiff alleges indirect infringement with the following language, which appears throughout the complaint: "Defendants Comcast and NBCU, jointly, severally or alternatively in their respective cable television networks, services and transmission systems have been and are now infringing, directly and indirectly by way of inducement and/or contributory infringement . . . the '425 Patent . . . ." *See, e.g.*, FAC ¶¶ 39, 53, 55, 56.

But aside from that statement, repeated at various points, the facts on which Plaintiff seeks to establish a claim of inducement or contributory infringement are unclear. Plaintiff alleges that Comcast "directs and controls" some of NBCU's program transmission and encoding activities. *See, e.g.*, *id.* ¶ 59. Presumably, this allegation implies that Comcast is inducing or contributing to an alleged direct infringement, and that NBCU is the alleged direct infringer. In a Sur-Reply to Comcast's Motion to Dismiss, Plaintiff states that the Amended Complaint alleges NBCU to be the direct infringer, though Plaintiff also alleges both parties are engaged in joint direct infringement.[6]

_____

[6] Plaintiff argues that it has alleged a claim of "direct infringement within divided infringement with two entities, Defendant Comcast and Defendant NBCU." Pl.'s Supplemental Resp. Def.'s Mot. Dismiss 9, ECF No. 30 (citing *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015)). Plaintiff's divided infringement theory, however, is incompatible with Plaintiff's indirect infringement claims. An indirect infringement claim requires an underlying direct infringement. As the Supreme Court has held, because direct infringement occurs only when a single entity has performed all

## 1. Inducement

The U.S. Patent Act provides: "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C § 271(b). To make out a claim of induced infringement, the patentee must (1) establish an underlying direct infringement, and (2) show that the inducing party knew that "the induced acts constitute patent infringement." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). The Federal Circuit has explained that inducement requires a showing that the defendant "specifically intended" for a third party to infringe on the patent. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) (citing *Glob.-Tech Appliances, Inc.*, 563 U.S. and *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006)). A court may infer specific intent "from circumstantial evidence where a defendant has both knowledge of the patent and specific intent to cause the acts constituting infringement." *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1342 (Fed. Cir. 2008).

Plaintiff's Amended Complaint does not make clear what pattern of facts establish the alleged inducement. Its briefing cites various facts. Plaintiff suggests that Comcast induced NBCU to use the "second step" in the '425 Patent's method. Pl.'s Supplemental Resp. Def.'s Mot. Dismiss 7, ECF No. 30. It further suggests, quoting paragraph 59 of its Amended Complaint, that Comcast induced NBCU's acts of direct infringement by generating coding language that ultimately accompanies NBCU's programming material. *Id.* at 13.

Despite Plaintiff's efforts to clarify NBCU's role as the direct infringer, Plaintiff has not pled facts that would, if true, amount to a direct infringement by NBCU. The Federal Circuit has

---

steps of a patented method, a patentee will have no inducement claim when infringement "is not attributable to any one person." *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 134 S. Ct. 2111, 2117 (2014). At this stage, however, I will treat Plaintiff's claims as alternative theories of liability.

held "that a method claim is directly infringed only if each step of the claimed method is performed." *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1328 (Fed. Cir. 2008). Plaintiff suggests that NBCU infringes the "second step" of the PrintWriter method by "encoding and transmitting . . . print() or println() statements of the PrintWriter method for transmission in conjunction with program signals representative of predetermined program material." Pl.'s Supplemental Resp. Def.'s Mot. Dismiss 3, ECF No. 30.

Plaintiff's inducement claim therefore fails for two reasons. First, taking Plaintiff's facts as true, Plaintiff has not alleged that NBCU performed **all** steps of a claimed method. The '425 Patent does not claim an independent method for encoding and transmitting the print() or println() statements. The text of the '425 Patent shows that Claim 13, which claims a method of encoding a "hyperlink address string for transmission with . . . program signals representative of . . . predetermined program material," is a dependent claim. Claim 13 builds on Claim 2, a method for "generating [a] hyperlink address string for transmission in conjunction with program signals representative of predetermined program material . . . ." Ex. A 16–17, ECF No. 1-2. It adds to Claim 2 an additional step of encoding the hyperlink address string for transmission with the program material. If, as Plaintiff alleges, NBCU performs the second step of Claim 13, NBCU has not directly infringed on one of the methods claimed in the '425 Patent. Significantly, Plaintiff has not alleged that any other third party may have performed acts that amount to a direct infringement of the '425 Patent. Rather, Plaintiff has alleged only that NBCU performs one of several steps of Claim 13.

Second, Plaintiff has not alleged facts plausibly showing that Comcast held the intent necessary for an induced infringement claim. Plaintiff has not alleged that Comcast knew of the

'425 Patent prior to the filing of this case in November 2015.[7]  Admittedly, the Federal Circuit

has held that the filing of a complaint may establish knowledge of an underlying direct

infringement.  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 60 (Fed. Cir. 2012).

To establish knowledge, however, the complaint must contain information showing how a

defendant's products or methods infringe the patent in question and how the defendant "is

inducing third parties to use those products and methods in an infringing manner."  *Bonutti*

*Skeletal Innovations, LLC v. Globus Med. Inc.*, No. 14-6650, 2015 WL 3755223, at *8 (E.D. Pa.

June 15, 2015).  Plaintiff has not adequately alleged that Comcast knew NBCU was engaged in

activity that constituted a direct infringement.  A complaint that fails to set forth an adequate

claim does not suffice to provide notice of infringement.  In substance, the Amended Complaint

does more to confuse than illuminate the role Comcast might have played in inducing any direct

infringement.

The more critical flaw in Plaintiff's indirect infringement claim, however, is its failure to

plead facts alleging Comcast's specific intent.  Plaintiff suggests that circumstantial evidence

reveals Comcast's specific intent to induce acts that directly infringed on the Patent.  Plaintiff

alleges that Comcast directs and controls NBCU's program transmission activity by generating

"print() or println() statements."  Plaintiff suggests that, from these allegations, a court could

infer Comcast's specific intent.  *See* Pl.'s Supplemental Resp. Def.'s Mot. Dismiss 8, ECF No.

30 (citing *Hilgraeve, Inc. v. Symantec Corp.*, 272 F. Supp. 2d 613, 620 (E.D. Mich. 2003)).  A

court may infer specific intent from circumstantial evidence that a "defendant has both

---

[7] Plaintiff alleges only that it posted a notice of the '425 Patent on its website.  Constructive knowledge of
a patent is an insufficient basis for pre-suit liability under an inducement claim.  Plaintiff would need to
allege that Comcast had actual knowledge of the '425 Patent prior to the filing of Plaintiff's Complaint to
collect damages from a prior date.  *SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1379 (Fed. Cir.
2013) (citing *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765–66 (2011)).

knowledge of the patent and specific intent to cause the acts constituting infringement." *Ricoh Co.*, 550 F.3d at 1342. Yet, the circumstantial evidence that Plaintiff cites does not lead to the plausible inference that Comcast intended for NBCU to perform any step, let alone all steps, of a claimed method of the '425 Patent. Assuming as true Plaintiff's assertion that Comcast controls NBCU's transmission activity, it does not automatically follow that Comcast intended for NBCU to pursue the "signal transmission and encoding activities" that allegedly infringe on the Patent. In using the term "control," Plaintiff offers no indication that it is alleging that all of NBCU's activities are ultimately attributable to Comcast. Plaintiff's broad allegation that Comcast directs and controls NBCU's programming activity is insufficient to lend plausibility to the assertion that Comcast intended NBCU to adopt activities that amounted to infringing behavior.[8] For these reasons, Plaintiff has not stated a claim of indirect infringement against Comcast.

## 2. Contributory Infringement

Indirect infringement of a patent may also come in the form of contributory infringement. Section 271(c) provides:

> Whoever offers to sell or sells within the United States . . . a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of

---

[8] Plaintiff's First Amended Complaint alleges facts relating to the Federal Communications Commission's approval of Comcast's acquisition of NBCU. In approving the acquisition, the FCC imposed "programming conditions" on Comcast and NBCU, which Plaintiff believes to "highlight[] the legal/regulatory necessity of Defendant Comcast to direct and control Defendant NBCU's means for transmitting program signals representative of predetermined program material to ensure compliance with . . . programming conditions." FAC ¶¶ 4–5. The FCC's conditions, as described in the First Amended Complaint, however, only impinged on the licensing of program material and set terms on which Comcast and NBCU must give competitors access to their programming. The conditions may indeed require Comcast to ensure that NBCU comply with the programming conditions. But according to the description Plaintiff provides in the Complaint, the order has no bearing on what other signals—for example a hyperlink address string transmitted in conjunction with the program content—either party may or may not employ. *Id.* ¶¶ 6–11. Control over NBCU's program content does not necessarily bring control over all aspects of NBCU's programming activity. Plaintiff thus has presented no logical link between the FCC order and the question of whether Comcast controls NBCU's encoding and transmission of code that may infringe on the '425 Patent.

the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c). The Supreme Court interprets the term "knowing" in § 271(c) to require that a patentee show that the party allegedly engaged in contributory infringement "knew that the combination for which his component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).

Plaintiff has alleged no facts suggesting that Comcast produced a component of a "combination" that has ultimately infringed on the '425 Patent. Nor has Plaintiff alleged facts suggesting that Comcast knew that the supposed "combination" was infringing on the patent. Plaintiff argues that Comcast's contributory activity has no "non-infringing substitute." Although this assertion is indeed an element of a contributory infringement claim, pleading that one element sufficiently does not cure the larger omissions in Plaintiff's Complaint. Finally, as explained above, Plaintiff has not alleged a plausible third-party direct infringement, as required for a finding of liability under § 271(c). Plaintiff has therefore not stated a claim of contributory infringement against Comcast.

**C. Plaintiff's Joint Infringement Claim**

Joint infringement is a form of direct infringement of a patent claim under § 271(a) where imitations of the claim are collectively performed or supplied by more than one actor, but are all legally attributable to a single actor. According to the Federal Circuit, an entity is "responsible for others' performance of method steps in two sets of circumstances: (1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).

Plaintiff argues that divided or joint infringement exists because Comcast and NBCU together perform all steps of a method claimed in the '425 Patent. It argues that Comcast generates infringing print() or println() statements for transmission in conjunction with programming, and that NBCU encodes and transmits the infringing statements. According to Plaintiff, Comcast is responsible for NBCU's performance of infringing steps because Comcast either directs or controls NBCU's performance of these steps, or has entered a "joint enterprise" with NBCU. Plaintiff's joint infringement claim fails, however, because the Amended Complaint has not alleged facts supporting either theory.

In arguing that Comcast directs or controls NBCU's infringing activity, Plaintiff calls on the same set of facts used to allege induced infringement. Plaintiff alleges that a series of actions, taken by Comcast, results in Comcast directing and controlling "certain program signal transmission and encoding activities of Defendant NBCU that infringe the '425 Patent." These actions include generating "print() or println() statements of the PrintWriter method to be transmitted in conjunction with program signals representative of predetermined program material by Defendant NBCU"; generating "print() or println() statements of the PrintWriter method enabling Defendant Comcast to remotely monitor, control and debug program signals representative of predetermined program material transmitted via means for transmitting program signals by Defendant NBCU"; generating "print() or println() statements of the PrintWriter method enabling Defendant Comcast to remotely debug program signals representative of predetermined program material transmitted via means for transmitting program signals by Defendant NBCU"; and generating "print() or println() statements of the PrintWriter method to be transmitted in conjunction with program signals representative of predetermined program material by Defendant NBCU." FAC ¶¶ 59, 87, 94, 102, 110. In sum,

Plaintiff alleges that Comcast generates infringing code to accompany program signals, including programming that NBCU broadcasts, and by generating this code, Comcast directs or controls NBCU's infringing activity.

It is by no means clear from these allegations, however, that Comcast controls or directs NBCU. The allegation requires the Court to infer, based on the allegation that NBCU uses the infringing code in its program material, that Comcast must direct or control NBCU's transmission practices. Assuming that NBCU encodes and transmits the infringing code along with its programming material, Plaintiff has not provided any linkage back to Comcast.

Plaintiff suggests that by alleging a relationship between Comcast and NBCU, it has shown that NBCU was "obligated to infringe" the Patent. Pl.'s Supplemental Resp. Def.'s Mot. Dismiss 13–14, ECF No. 30. Plaintiff's only pleadings relating to a relationship between the parties pertain to programming conditions that the Federal Communications Commission (FCC) issued in approving Comcast's acquisition of NBCU. Plaintiff suggests that the conditions "highlight[]" the need for Comcast to direct or control NBCU's "means for transmitting program signals . . . ." FAC ¶¶ 4–5. Plaintiff has alleged facts suggesting that the FCC conditions require Comcast to direct how NBCU licenses or distributes its programming, but Plaintiff has not alleged that such conditions require Comcast to direct NBCU's encoding and transmission practices. *See infra* note 8.

In the alternative, Plaintiff alleges that Comcast and NBCU are parties to a joint enterprise. A patentee alleging joint enterprise liability most show (1) an express or implied agreement among the members of the group; (2) a common purpose; (3) a shared "pecuniary interest" in that purpose; and (4) an "equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Akamai Techs., Inc.*, 797 F.3d at 1023 (citing

Restatement (Second) of Torts § 492 cmt. c). Plaintiff emphasizes that this inquiry is "a question of fact for a jury." Pl.'s Supplemental Resp. Br. 9, ECF No. 30 (citing *Akamai Techs., Inc.*, 797 F.3d at 1023). That said, a patentee cannot state a claim for joint enterprise liability without first alleging facts that, if true, would meet the four elements.

Plaintiff contends that the FCC's "programming conditions" form the basis of an "agreement between [Comcast and NBCU] . . ." amounting to a licensing agreement, which "requires or instructs [Comcast] to generate print() or println() statements of the PrintWriter method in conjunction with program signals representative of predetermined program material in the public interest." Pl.'s Supplemental Resp. Br. 13–14, ECF No. 30. It is unclear whether Plaintiff is attempting to suggest that the FCC programming conditions may somehow influence Comcast's use of "print() or println() statements." If so, the inference is too great a leap to follow from the facts alleged. Moreover, Plaintiff's allegation that the conditions require or instruct Comcast to generate print() or println() statements appears nowhere in the Amended Complaint.

Based on the FCC order, Plaintiff argues that its Amended Complaint alleges facts showing that Comcast and NBCU have "equal right of control" in the enterprise, thereby satisfying the fourth element for finding the parties engaged in a joint enterprise. The FCC required that Comcast "continue NBCU's policy of journalistic independence" in its networks' news programming. The order further required that the combined entity of Comcast and NBCU continue "in effect the position and authority of the NBC News ombudsman . . . ." Pl.'s Supplemental Br. 16, ECF No. 30. Based on this requirement, Plaintiff concludes that NBCU has "equal rights of control over . . . enterprise steps of [Comcast] generating . . . print() and println() statements of the PrintWriter method . . ." and NBCU's encoding and transmission

practices.  *Id.* at 16–17.  How Plaintiff makes this leap is unclear, and its Amended Complaint alleges no facts to support its plausibility.

The Federal Circuit has also held that, under the pleading standard set out in *Twombly* and *Iqbal*, a bare assertion that one party directs or controls another is insufficient to sustain a theory of joint infringement.  *Lyda v. CBS Corp.*, 838 F.3d 1331, 1340 (Fed. Cir. 2016).  Having failed to allege any facts showing that Comcast and NBCU are engaged in a joint enterprise that infringes steps of a claimed method, Plaintiff's claim for joint enterprise liability fails.  Because Plaintiff also fails to allege facts showing that Comcast directs or controls NBCU in its infringing activity, I dismiss Plaintiff's joint infringement claim.

**D. Willful Infringement**

Plaintiff seeks damages for willful infringement under 35 U.S.C. § 284.  FAC ¶ 123(c).  Under § 284, a court may "increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284.  Plaintiff alleges that Comcast had "prior constructive knowledge of the '425 Patent" because Plaintiff has listed the patent on the bottom of its webpage, PrintHD.TV, since May 27, 2014.  FAC ¶ 115.  Plaintiff also argues that because Comcast persisted in its alleged infringing activity after Plaintiff served its Complaint on Comcast Corporation on November 16, 2015, FAC ¶ 119, and its Amended Complaint on Comcast Cable, LLC on February 17, 2016, Comcast should be liable for enhanced damages.  Pl.'s Supplemental Resp. Br. 18–19, ECF No. 30.

In 2016, the Supreme Court abrogated the Federal Circuit's previous two-part test for proving willful infringement.  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).  In so doing, the Court invited district courts to exercise discretion in evaluating whether to award enhanced damages under 35 U.S.C. § 284.  Actual knowledge of the patent at the time of the

infringing activity may form the basis for establishing willful misconduct, though the "subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages . . . ." *Halo Elecs., Inc.*, 136 S. Ct. at 1932–34. In establishing this criteria, the Court sought to allow district courts to award enhanced damages in cases where an infringer, acting in bad faith, could nonetheless "muster a reasonable (even though unsuccessful) defense at the infringement trial." *Id.* at 1933.

Here, Plaintiff has not so far alleged any facts showing that Comcast had actual knowledge of the '425 Patent prior to the filing of the Complaint. Plaintiff's reference to the '425 Patent on its website is insufficient evidence that Comcast received actual notice of the patent. Nor has Plaintiff alleged facts showing that Comcast acted in bad faith, or engaged in any other degree of culpable behavior. Plaintiff has alleged no facts suggesting that Comcast acted recklessly, for example by alleging that Comcast had some reason to know that the '425 Patent might exist. *Id.* at 1933 ("[C]ulpability is generally measured against the knowledge of the actor at the time of the challenged conduct."). To the extent that Comcast has persisted in its alleged infringement of the '425 Patent after Plaintiff filed its complaints, this conduct could possibly amount to willful infringement. At this stage in the litigation, I will not deny Plaintiff the possibility of collecting enhanced damages related to Comcast's post-suit conduct. In the event further development of the record yields evidence of egregious conduct, Comcast may be subject to enhanced damages for alleged direct infringement of the '425 Patent.[9] Plaintiff may

---

[9] District courts are divided as to whether notice of an alleged infringement through the filing of a complaint, and an ongoing violation, form the basis for a claim of willful infringement. *See Aeritas, LLC v. Alaska Air Grp., Inc.*, 893 F. Supp. 2d 680, 685 (D. Del. 2012) ("[T]he court is not inclined to allow the mere notice of the charge of infringement gleaned from service of the complaint to pass muster for a willfulness claim under Rule 8."). The Court in *Aeritas* reached this conclusion in part after considering the *Seagate* test that the Supreme Court abrogated in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016), but also noted that "willfulness ordinarily depends on an infringer's prelitigation conduct." *Aeritas, LLC*, 893 F. Supp. 2d at 685. *See also SoftView LLC v. Apple Inc.*, No. 10-389-LPS, 2012 WL

not recover enhanced damages based on Comcast's conduct before Progme filed its Complaint unless further facts emerge.

## V. Conclusion

Plaintiff has stated a claim of direct infringement against Defendant Comcast in Counts I and II.  Progme has not alleged facts, however, that will allow any other claims to survive Defendants' motions to dismiss.  In Counts III–VI, Plaintiff has not shown that Comcast used or had any other connection with the instrumentalities that allegedly employ infringing code.  In Counts I–VI, Plaintiff has not stated a claim of indirect or joint infringement of the '425 Patent. While the Amended Complaint displays volumes of computer code, Plaintiff relies on thin conclusory statements to allege that Comcast directed or controlled NBCU, was party to a joint enterprise with NBCU, or intended for NBCU to perform steps that amounted to a direct infringement of the '425 Patent.  I therefore grant Comcast's Motion to Dismiss Plaintiff's claims of inducement, contributory infringement, and joint infringement in Counts I–II, and all claims in Counts III–VI, without prejudice.

---

3061027, at *8 (D. Del. July 26, 2012) ("*Seagate* implies that willful infringement allegations based only on post-filing conduct are inadequate.").

After *Halo*, some courts have adopted a more forgiving approach.  *See, e.g.*, *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 473 (D. Del. 2016) (allowing a plaintiff's "general allegations of willful infringement" to survive a motion to dismiss under the "less rigid standard announced in *Halo*" where plaintiff alleged that defendant had continued its infringing activity after a complaint was filed). Other district judges have held that, without facts demonstrating egregious conduct "beyond typical infringement" by the defendant after a complaint is filed, post-suit knowledge of the patent is an insufficient basis for enhanced damages.  *See Princeton Digital Image Corp. v. Ubisoft Entm't SA*, No. 13-335-LPS-CJB, 2016 WL 6594076, at *11 (D. Del. Nov. 4, 2016); *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, No. 216-00857-RCJ-VCF, 2016 WL 4521682, at *14 (D. Nev. Aug. 29, 2016); *Dorman Prod., Inc. v. Paccar, Inc.*, 201 F. Supp. 3d 663, 681 (E.D. Pa. 2016) ("*Halo* requires more than simple awareness of the patent and awareness of infringement, and [plaintiff] has not met its burden of demonstrating willful infringement based on [defendant's] awareness of the design patents and alleged infringement for less than one month prior to filing this action.").  As these courts have noted, the Supreme Court in *Halo* emphasized that "enhanced damages are generally appropriate under § 284 only in egregious cases."  *Halo Elecs., Inc.*, 136 S. Ct. at 1932.

The doctrine of res judicata also precludes Plaintiff from asserting infringement claims against NBCU.  Plaintiff voluntarily dismissed with prejudice its claims against "NBCUniversal, Inc.," and may not now assert the same claims against NBCU.  I grant Defendant NBCU's Motion to Dismiss.


                                                                             _____/s/ Gerald Austin McHugh
                                                                      United States District Judge