**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**PROGME CORPORATION**,                    Civil Action No. 2:17-cv-01488-GAM

             **Plaintiff**                    District Judge Gerald Austin McHugh

      v.


**COMCAST CABLE**

      **COMMUNICATIONS, LLC**,

           **Defendant**

**PLAINTIFF'S BRIEF IN PLAINTIFF'S REPLY IN OPPOSITION TO COMCAST**
**CABLE COMMUNICATIONS, LLC'S MOTION TO DISMISS UNDER RULE 12(B)(6)**
**OF THE FEDERAL RULES OF CIVIL PROCEDURE BECAUSE THE PATENT**
<u>**CLAIMS ARE DIRECTED TO UNPATENTABLE SUBJECT MATTER**</u>

Plaintiff Progme Corporation hereby replies in opposition to Doc. 50, Comcast Cable

Communications, LLC's Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil

Procedure Because the Patent Claims are Directed to Unpatentable Subject Matter, filed in the

above-captioned matter on 2/15/18.

# TABLE OF CONTENTS

**Pg(s)**

**TABLE OF AUTHORITIES**                                                 iii-iv

I.   **COMCAST'S MOTION TO DISMISS**                                     **1-2**
     **SHOULD BE SUMMARILY DENIED.**


II.  **DEFENDANT COMCAST, IN ITS MOTION TO DISMISS,**                    **2-13**
     **ENTIRELY DISREGARDS THE PROBLEM IN PRIOR ART AND**
     **SOLUTION DESCRIBED AND CLAIMED IN THE '425 PATENT.**

     **IMPROVEMENT TO COMPUTER CAPABILITIES**                            **5-8**
     **USING PRINTWRITER DISCLOSED AND CLAIMED IN THE**
     **INVENTION OF THE '425 PATENT.**

     **Representative Claim Chart**                                      **8-13**


III. **CASELAW SINCE *ALICE* HAS CONSISTENTLY ESTABLISHED**             **13-17**
     **THAT A PROBLEM AND SOLUTION DESCRIBED AND CLAIMED**
     **IN A COMPUTER-IMPLEMENTED PATENT OVERCOMES ANY BASIS**
     **TO FIND UNPATENTABLE SUBJECT MATTER.**

     **Three Recent Cases Applying *Alice* to Improvements in Computer-**
     **Implemented Patents Find the Respective Improvements Render**
     **the Patents Patent-Eligible.**

     1.  *Enfish, LLC v. Microsoft*                                      **13-15**

     2.  *McRO, Inc. v. Bandai Namco Games America Inc.*                 **15**

     3.  *Visual Memory, LLC v. NVIDIA Corp.*                            **16-17**


**CERTIFICATE OF SERVICE**                                               **18**

## <u>TABLE OF AUTHORITIES</u>

<u>Pg(s)</u>

**Cases**

*Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986)   **1**

*Fowler v. UMPC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009)   **1**

*Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009)   **1**

*Phonometrics, Inc. v. Hospitality Franchise System, Inc.,*   **1**

203 F.3d 790, 794 (Fed. Cir. 2000)

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, --- U.S. ---,   **1,2,13,14**

134 S. Ct. 2347 (2014)

*In re Roslin Inst. (Edinburgh),* 750 F.3d 1333, 1335 (Fed. Cir. 2014)   **1**

*Pabst Licensing GmbH & Co. KG v. Xilinx Inc.*, --- F. Supp. 3d ---,   **2**

2016 WL 3196657, at *7 (N.D. Cal. 2016 (Koh, J.)

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,   **2**

776 F.3d 1343, 1349 (Fed. Cir. 2014)).

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014)   **13**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016),   **13**

cert. denied 137 S. Ct. 1596

*SkillSurvey, Inc. v. Checkster LLC*, 178 F. Supp. 3d 247 (E.D. Pa 2016),   **13,16**

aff'd, 683 F.. app'x 930 (Fed. Cir. 2017)

*Network Architecture Innovations LLC v. CC Network Inc.*, No. 2:16-CV-00914-JRG,   **13**

2017 WL 1398276, at *1-*2, *5 (E.D. Tex. Apr. 18, 2017)

*Enfish, LLC v. Microsoft*, 822 F.3d 1327 (Fed. Cir. 2016)                    **13,14**

*McRO, Inc. v. Bandai Namco Games America Inc.*,                             **15**

837 F.3d 1299 (Fed. Cir. 2016)

*Visual Memory, LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017)         **16**

*Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91,                           **16**

131 S. Ct. 2238, 2244-53, 180 L.Ed.2d 131 (2011)

**Statutes**

Federal Rules of Civil Procedure, Rule 12(b)(6)                              **1,2,17**

35 U.S.C. § 101                                                              **13**

35 U.S.C. § 282                                                              **16**

Now comes Plaintiff Progme Corporation (hereinafter termed "Progme"), by counsel, and hereby replies in opposition to Doc. 50, Comcast Cable Communications, LLC's Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure Because the Patent Claims are Directed to Unpatentable Subject Matter, filed by Comcast Cable Communications, LLC (hereinafter termed "Comcast") in the above-captioned matter on 2/15/18.

## I.   COMCAST'S MOTION TO DISMISS SHOULD BE SUMMARILY DENIED.

A motion to dismiss is proper under Federal Rule of Civil Procedure Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The Court construes the allegations in the complaint in the light most favorable to the non-moving party and takes as true all material allegations in the complaint. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). In assessing a motion to dismiss, courts must accept all "well-pleaded facts as true" and disregard any legal conclusions. *Fowler v. UMPC Shadyside,* 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009)).

To state a claim for patent infringement, "a patentee need only plead facts sufficient to place the alleged infringer on notice … [to ensure] that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." *Phonometrics, Inc. v. Hospitality Franchise System, Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000). Defendant Comcast asserts that the patent-at-issue in the above-captioned case, U.S. Patent No. 8,713,425 (hereinafter termed " '425 Patent") fails to claim patent-eligible subject matter under Section 101 and pursuant to the Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, --- U.S. ---, 134 S. Ct. 2347 (2014) ("*Alice*"). Whether a claim recites patent-eligible subject matter under Section 101 is a question of law. *In re Roslin Inst. (Edinburgh),* 750 F.3d 1333, 1335 (Fed. Cir. 2014). "Where the court has a 'full understanding of the basic character of

the claimed subject matter,' the question of patent eligibility may properly be resolved on the pleadings." *Pabst Licensing GmbH & Co. KG v. Xilinx Inc.*, --- F. Supp. 3d ---, 2016 WL 3196657, at *7 (N.D. Cal. 2016 (Koh, J.) (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014)).

As demonstrated below, the '425 Patent comprises a computer-implemented patent disclosing and claiming a specific improvement over identified prior art systems in a particular technological area involving computer capabilities using a PrintWriter.  As such, the '425 Patent is directed to patent-eligible subject matter under the *Alice* inquiry at step one. Accordingly, the *Alice* inquiry ends here at step one without the need for this Court to even consider the **inventive concept** of the '425 Patent in step two of the *Alice* inquiry and Defendant Comcast's Motion to Dismiss, Doc. 50, should be summarily denied.

## II.      DEFENDANT COMCAST, IN ITS MOTION TO DISMISS, ENTIRELY DISREGARDS THE PROBLEM IN PRIOR ART AND SOLUTION DESCRIBED AND CLAIMED IN THE '425 PATENT.

After disclosing several specific prior art systems for hyperlinking to program-related content, the "Description of the Related Art" section of the specification in the '425 Patent discloses a primary improvement of the '425 Patent to address a specific problem in said prior art systems:

> "Content hyperlinked to in said prior art systems is generally content that is printable. Adding printing utility to said prior art systems, however, would require adding print activation means on top of the existing hyperlink activation means in said prior art systems. It would be beneficial to combine activation of hyperlinking with activation of printing so that only one activation is required to activate both hyperlinking to and printing program-related content." *See* '425 Patent at 1:33-40.

The specific mechanisms and related objects for implementing said primary improvement over prior art systems disclosed in the invention are stated in the "SUMMARY AND OBJECTS OF THE INVENTION" section of the specification in the '425 Patent:

> "The invention integrates hyperlinking to and printing program-related content so that hyperlinking to the content prints the content. Specifically in the invention, hyperlinking to predetermined hyperlinked content corresponding to predetermined program material prints predetermined printable output of said predetermined hyperlinked content.
>
> One object of the invention is to integrate hyperlinking to and printing hyperlinked content related to program material.
>
> Another object of the invention is to combine in the same hyperlink address string hyperlinking attributes and values and printing attributes and values.
>
> Yet another object of the invention is to enable hyperlinking to predetermined hyperlinked content corresponding to predetermined program material to print pre-defined printable output of said predetermined hyperlinked content."

*See* '425 Patent at 1:51-65.

Defendant Comcast, in its Motion to Dismiss, entirely disregards said primary improvement of the '425 Patent in simply asserting that the invention is directed to the abstract idea of "integrating hyperlinking to and printing program-related content so that hyperlinking to the content prints the content." Doc. 50-2, ¶¶ 16-17. Understanding the concept of hyperlinking printing program-related content, however, requires an understanding by those skilled in the art of the hyperlink address string structured as a PrintWriter method disclosed and claimed in the '425 Patent. Defendant Comcast in its simple assertion made in its Motion to Dismiss that the

invention is directed to the abstract idea of hyperlinking to program-related content printing program-related content misses the very essence of the **inventive concept** behind the '425 Patent, that the ability of hyperlinking to program-related content* to print program-related content is enabled by an improvement to computer capabilities using a PrintWriter implemented *inter alia* in the apparatus automatic hyperlinking and hyperlinking printing capabilities, disclosed in the specification and claimed in, respectively, claims 22 and 24 of the'425 Patent, to solve a specific problem in prior art systems. *See* '425 Patent at Claims 22 and 24.

- In the invention of the '425 Patent, said program-related content comprises predetermined program material and resource identifiers uniquely identifying resources corresponding to said predetermined program material. *See* '425 Patent at Claims 1, 2 and 14. Further, in the invention of the'425 Patent, a predetermined hyperlink address to hyperlink to a resource corresponding to predetermined program material comprises a resource identifier identifying a resource in the initial array position of a list of resource identifiers uniquely identifying resources. *See* '425 Patent at Claims 1, 2 and 14. To hyperlink to any one resource in the invention of the '425 Patent, a respective resource identifier is processed and to enable such an hyperlink to a resource the respective resource identifier must exist **outside** the resource identified (pointed to) by the respective resource identifier. Indeed, a resource identifier existing **in** an identified resource would not operate as intended to hyperlink to such an identified resource.

  In this regard, it should be noted that the allegations concerning the publication (U.S. Pat. App. 12/054865 and subsequently issued Patent No. 8302103) referred to in Doc. 50-2, pg. 8, n. 8 and pg. 20, n. 11 were responded to by Progme both in a Brief, Doc. 40-1, and in an **AFFIDAVIT OF DAVID A. REAMS**, Doc 40-2, which are both incorporated herein by reference. *See* Doc. 50-2, pg. 8, n.8 and pg. 20, n.11 and Docs. 40-1 and 40-2. As clearly demonstrated in said Docs. 40-1 and 40-2, neither U.S. Pat. App. 12/054865 nor subsequently issued Patent No. 8302103 was material to the application, U.S. App. No. 12/687945, that matured into the '425 Patent and in fact both U.S. Pat. App. 12/054865 and Patent No. 8302103 teach away from the invention of the application, U.S. App. No. 12/687945, that matured into the '425 Patent because each U.S. Pat. App. 12/054865 and Patent No. 8302103 specification "assumes that a unique resource identifier 709 exists **in** each resource." (Emphasis added). *See* 20080244576 Pub., pg., 4, lines 4-5 and U.S. Pat. No. 8302103 at 6:48-49. Indeed, the resource identifier in both U.S. Pat. App. 12/054865 and Patent No. 8302103 identifies a resource to calculate resource usage whereas the resource identifier in the application, U.S. App. No. 12/687945, that matured into the '425 Patent identifies a resource to hyperlink to the resource using a resource identifier as an hyperlink address. Thus, both said U.S. Pat. App. 12/054865 and Patent No. 8302103 teach a design that would render the intended operation of the application, U.S. App. No. 12/687945, that matured into the '425 Patent inoperable.

## IMPROVEMENT TO COMPUTER CAPABILITIES USING A PRINTWRITER DISCLOSED AND CLAIMED IN THE INVENTION OF THE '425 PATENT.

In the invention of the '425 Patent, a resource identified by a resource identifier is defined within a print() or println() statement of the PrintWriter method. '425 Patent at Claim 4. A list in which resource identifiers uniquely identify resources thus comprises a list of resource identifiers uniquely identifying print() or println() statements of the PrintWriter method.

For example, "[i]n a servlet-client structure, the hyperlink address to the servlet may indicate attributes and values for printing the hyperlinked content at the servlet to the client screen or a file as in the following … sample snippet of a Servlet.

TABLE-US-0001 TABLE-US-00001 response.setBufferSize ("8*1024"); response.setContentSize ("text/html"); PrintWriter out = response.getWriter ( ); out.println ("<HTML>"); out.println ("<HEAD> <TITLE> Servlet Output</TITLE> </HEAD>"); out.println ("<BODY>"); out.println ("<P> Welcome To this World </P>"); out.println ("</BODY>"); out println ("</HTML>");."

*See* '425 Patent at 15:21-35.

This code snippet of a Servlet indicates that the content hyperlinked to in each and every one of said six println() statements of the PrintWriter method in said code snippet is to be temporarily stored in a PrintWriter buffer of 8*1024 buffer size before being printed to a predetermined destination file or stream.   It is well known to those skilled in the art that said hyperlinked content temporally stored in said PrintWriter buffer is not printed to said predetermined destination file or stream until said PrintWriter buffer is full and/or flushed, when said hyperlinked content is automatically printed to said predetermined destination file or stream.

In said code snippet, the list of resources identified by the resource identifiers comprises a list of said six println() statements of the PrintWriter method. Via the hyperlink address string structured as a PrintWriter method disclosed and claimed in the '425 Patent, said six println()

5

statements of the PrintWriter method including the value(s) of any one or more arguments defined in said println() statements are each sequentially hyperlinked to, filling the PrintWriter buffer until full and/or flushed, before the hyperlinked content temporally stored in the PrintWriter buffer is then automatically printed to said predetermined destination file or stream. Hyperlinking to each and every println() statement of the PrintWriter method in said code snippet is enabled in the invention of the '425 Patent by hyperlinking through said list structure to fill the PrintWriter buffer with argument values from arguments defined within the println() statements of the PrintWriter method. In this way, enabled by the hyperlinked-list structure disclosed and claimed in the invention of the '425 Patent, hyperlinking to program-related content prints the program-related content when the PrintWriter buffer is full and/or flushed.

   As disclosed and claimed in the '425 Patent, a predetermined activation attribute such as **ON LOAD** (NOT SHOWN) activates processing of the first attribute of the hyperlink address string comprising a list structure, recited in the preamble of each independent claim in the '425 Patent, for "hyperlinking to a resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed." *See* '425 Patent at Claims 1, 2, 4 and 14. When said first attribute including said list structure is processed through each listed resource identified by a resource identifier in said first attribute, then the PrintWriter buffer is full and/or flushed and hyperlinking prints said predetermined printable output of a resource in the initial array position of a list in which resource identifiers uniquely identifying resources corresponding to predetermined program material are arrayed wherein said at least one parameter instructing a PrintWriter to print said predetermined printable output of a resource in the initial array position of a list in which resource identifiers uniquely identifying resources corresponding to predetermined program

material are arrayed. In this hyperlinking printing step, a second attribute of the hyperlink address string indicating one or a plurality of parameters defining predetermined printable output of a resource in the initial array position of a list in which resource identifiers uniquely identifying resources corresponding to predetermined program material are arrayed comprising at least one parameter instructing a PrintWriter to print said predetermined printable output of a resource in the initial array position of a list in which resource identifiers uniquely identifying resources corresponding to predetermined program material are arrayed is processed to print said predetermined printable output of a resource in the initial array position of a list in which resource identifiers uniquely identifying resources corresponding to predetermined program material are arrayed to said destination file or stream. *See* '425 Patent at Claims 1 and 14.

Processing this hyperlink address string by the apparatus claimed in the '425 Patent is "tied to and dependent upon … generating means to receive the first and second attribute included in the hyperlink address string for hyperlinking and printing predefined printable output of predetermined hyperlinked content." *See* '425 Patent at 8:24-30. Specifically, hyperlinking to said six println() statements of the PrintWriter method in said code snippet corresponds to the claimed apparatus processing: "A) processing said predetermined hyperlink address indicated in said first attribute to hyperlink to said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to predetermined program material are arrayed" and printing predetermined printable output from the PrintWriter buffer to said destination file or stream when the PrintWriter buffer is full and/or flushed corresponds to the claimed apparatus processing: "B) processing said one or a plurality of predetermined parameters defining said predetermined printable output of said resource in an initial array position of a list in which resource identifiers  uniquely identifying resources corresponding to

predetermined program material are arrayed [comprising at least one parameter instructing a PrintWriter to print predetermined printable output of  said resource in an initial array position of a list in which resource identifiers  uniquely identifying resources corresponding to predetermined program material are arrayed] indicated in said second attribute." *See* '425 Patent at Claims 4 at 25:20-25 and 14 at 26:56-67.

    As demonstrated in the **Representative Claim Chart** below, said primary improvement is implemented in claims 2, 4-8, 12, 14, 22 and 24. *See* '425 Patent at Claims 2, 4-8, 12, 14, 22 and 24. Accordingly, in addition to claim 2, claims 4-8, 12, 14, 22 and 24 are representative of the claims implementing said primary improvement of the '425 Patent. Progme therefore objects to Doc. 50 classifying only claim 2 as a representative claim and in addition proposes that claims 4-8, 12, 14, 22 and 24 are and be representative claims.  Doc. 50-2, pg. 15, f. n. 9, pg. 11, pg. 16 & pg. 22.

**Representative Claim Chart**

Representative Claim

Construction

| Representative Claim | Construction |
|---|---|
| 2. A computer-implemented method deploying a generator for generating an hyperlink address string for transmission in conjunction with program signals representative of predetermined program material for hyperlinking to a resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed printing predetermined printable output of said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed, said method including the step of: generating said hyperlink address string via said generator for said transmission in conjunction with said | This method is practiced by Defendant Comcast in generating and encoding program signals representative of predetermined program material for hyperlinking to a print() or println() statement of the PrintWriter method in the initial array position of a list in which resource identifiers uniquely identifying print() or println() statements of the PrintWriter method corresponding to said predetermined program material are arrayed. |

| | |
|---|---|
| program signals representative of said predetermined program material including a first attribute indicating a predetermined hyperlink address comprising a resource identifier identifying said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed and a second attribute indicating one or a plurality of predetermined parameters defining said predetermined printable output of said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed. | Implements primary improvement. 1:32-40. |
| | |
| | This predetermined hyperlink address comprises a resource identifier identifying said print() or println() statement of the PrintWriter method in the initial array position of a list in which resource identifiers uniquely identifying print() or println() statements of the PrintWriter method corresponding to predetermined program material are arrayed. 21:6-9;15:21-37. |
| 4. The method of claim 2 wherein said hyperlink address string is structured as a PrintWriter method including said first attribute indicating said predetermined hyperlink address comprising said resource identifier identifying said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed and said second attribute indicating said one or a plurality of predetermined parameters defining said predetermined printable output of said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed wherein said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed is defined within a print() or println() statement of said PrintWriter method, said one or a plurality of predetermined parameters defining said predetermined printable output of said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed comprises at least one parameter instructing a PrintWriter to print | Implements primary improvement. 1:32-40. |
| | |
| | This list comprises a list of resource identifiers uniquely identifying print() or println() Statements of the PrintWriter method. 21:6-9; 15:21-37. |
| | |
| | Said resource comprises a print() or println() statement of the PrintWriter method. Said resources corresponding to said predetermined program material comprises print() or println() statements of the PrintWriter method. 21:6-9; 15:21-37. |
| | |
| | This parameter instructs the PrintWriter to |

| | |
|---|---|
| said predetermined printable output of said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed and said predetermined printable output of said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed is printed via said PrintWriter. | print predetermined printable output of |
| | a resource in the initial array position of |
| | a list in which resource identifiers |
| | uniquely identifying resources are arrayed |
| | when said list is hyperlinked through so |
| | that the PrintWriter buffer is full and/or |
| | flushed. 15:21-39. |
| 5. The method of claim 4 wherein said hyperlink address string is structured as a PrintWriter method having an out parameter and said PrintWriter prints said predetermined printable output to display on a screen. | This parameter instructs the PrintWriter to |
| | print predetermined printable output of |
| | a resource in the initial array position. Id. |
| 6. The method of claim 4 wherein said hyperlink address string is structured as a PrintWriter method having a writer parameter and said PrintWriter prints said predetermined printable output to display on a screen. | This parameter instructs the PrintWriter to |
| | print predetermined printable output of |
| | a resource in the initial array position. Id. |
| 7. The method of claim 4 wherein said hyperlink address string is structured as a PrintWriter method having a pw parameter. | This parameter instructs the PrintWriter to |
| | print predetermined printable output of |
| | a resource in the initial array position. Id. |
| 8. The method of claim 4 wherein said hyperlink address string is structured as a PrintWriter method having a PrintStream parameter and said PrintWriter prints said predetermined printable output to display on a screen. | this parameter instructs the PrintWriter to |
| | print predetermined printable output of |
| | a resource in the initial array position.Id. |
| 12. The method of claim 2 wherein said hyperlink address string further includes a third attribute indicating predetermined activation of both hyperlinking to said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed and printing said predetermined printable output of said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed. | Implements primary improvement. 1:32-40. |
| | Predetermined activation of hyperlinking |
| | comprises the one activation of both |
| | hyperlinking to a resource and |
| | printing predetermined printable |
| | output of the resource wherein |
| | the printing is printed by the hyperlinking |
| | printing according to Claim 24. 1:33-40 |
| 14. A computer-implemented apparatus having a processor for processing an hyperlink address string in conjunction with program signals | This apparatus comprises the Accused |
| | Instrumentalities such as set-top boxes |

| | |
|---|---|
| representative of predetermined program material for hyperlinking to a resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed printing predetermined printable output of said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed, said apparatus comprising: means for receiving program-related signals for receiving said hyperlink address string in conjunction with said program signals representative of said predetermined program material including a first attribute indicating a predetermined hyperlink address comprising a resource identifier identifying said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed and a second attribute indicating one or a plurality of predetermined parameters defining said predetermined printable output of said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed and means for processing via said processor operably coupled to said means for receiving program-related signals for processing said hyperlink address string in conjunction with said program signals representative of said predetermined program material for hyperlinking to said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed printing said predetermined printable output of said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed: A) processing said predetermined hyperlink address indicated | Defendant Comcast has sold or leased for |
| | its cable television delivery system. |
| | Implements primary improvement. 1:32-40. |
| | This hyperlinking printing is performed |
| | by processing B) a parameter instructing |
| | the PrintWriter to print predetermined |
| | printable output of a resource in the initial |
| | array position of a list in which resource |
| | identifiers uniquely identifying resources |
| | corresponding to predetermined program |
| | material are arrayed when all processing A) |
| | to hyperlink through the list of all |
| | resources corresponding to predetermined |
| | program material is completed and the |
| | PrintWriter buffer is full and/or flushed. |
| | 8:46-62;15:21-37. |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | A) Processing to hyperlink through |

in said first attribute to hyperlink to said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed and B) processing said one or a plurality of predetermined parameters defining said predetermined printable output of said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed indicated in said second attribute for said hyperlinking to said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed printing said predetermined printable output of said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed indicated in said second attribute.

22. The apparatus of claim 14 wherein said apparatus further comprises means for hyperlinking operably coupled to said means for processing and said hyperlink address string further includes a third attribute indicating said means for hyperlinking is automatically activated wherein said apparatus further comprises: means for automatically activating said means for hyperlinking operably coupled to said means for processing and configured for automatically activating said means for hyperlinking to automatically hyperlink to said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program material are arrayed responsive to said third attribute.

24. The apparatus of claim 14 wherein said hyperlinking prints said predetermined printable output of said resource in an initial array position of a list in which resource identifiers uniquely identifying resources corresponding to said predetermined program

| |
|---|
| list of resources, print() or println() statements of the PrintWriter method. |
| B) Processing after the list of resources is hyperlinked through, when the PrintWriter buffer is full and/or flushed, for hyperlinking printing predetermined printable output of the resource in an initial array position of a list in which resource identifiers uniquely identifying resources are arrayed wherein the parameter processed instructs the PrintWriter to print predetermined printable output of the resource in the initial array position of a list in which resource identifiers uniquely identifying resources are arrayed. 8:46-62;15:21-37. |
| Implements primary improvement. 1:32-40. |
| Automatic hyperlinking enabled responsive To activation attribute that activates hyperlinking to a resource. |
| The automatic activation attribute may comprise ON LOAD (NOT SHOWN). 7:9-31. |
| Hyperlinking printing enabled: After hyperlinking through list of resources, the PrintWriter buffer is full and/or flushed and the hyperlinking prints to the destination file or stream. 8:31-62;15:21-37. |

| material are arrayed via a PrintWriter. | Implements primary improvement.1:32-40 |
|---|---|

### III.   CASELAW SINCE *ALICE* HAS CONSISTENTLY ESTABLISHED THAT A PROBLEM AND SOLUTION DESCRIBED AND CLAIMED IN A COMPUTER-IMPLEMENTED PATENT OVERCOMES ANY BASIS TO FIND UNPATENTABLE SUBJECT MATTER.

By stating and implementing said primary improvement over identified prior art systems, the '425 Patent discloses and claims patent-eligible subject matter pursuant to recent case law including the three cases discussed below applying *Alice* to improvements in computer-implemented patents. In contrast to the three cases cited and discussed below, however, none or the cases cited in Defendant Comcast's Motion to Dismiss involve computer-implemented patents having an improvement over prior art systems as the '425 Patent does. Thus, rather than being "particularly relevant", *Ultramercial, Inc. v. Hulu, LLC* is not relevant at all.  Doc. 50-2, ¶¶ 18. For similar reasons, *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, *SkillSurvey, Inc. v. Checkster LLC* and *Network Architecture Innovations LLC v. CC Network Inc.* are all not relevant to the above-captioned case where the '425 Patent discloses and claims an improvement over prior art systems. See Doc. 50-2, ¶¶ 19-21**.**

#### Three Recent Cases Applying *Alice* to Improvements in Computer-Implemented Patents Find the Respective Improvements Render the Patents Patent-Eligible.

##### 1.   *Enfish, LLC v. Microsoft*

On May 12, 2016, in *Enfish, LLC v. Microsoft*, 822 F.3d 1327 (Fed. Cir. 2016) an appeal from the U.S. District Court for the Central District of California, the U.S. Court of Appeals for the Federal Circuit reversed a summary judgment of invalidity of claims related to self-referential database technology as being ineligible for patenting under 35 U.S.C. § 101. In concluding that the claimed technology was patent-eligible, the Court found that the claims were not abstract for

13

purposes of the first step of the eligibility analysis pronounced in *Alice*. Rather, the Court found that the claims were directed to a specific improvement to computer-related technology instead of use of a computer in its ordinary capacity, e.g., for economic or other tasks.

### Ineligible Claims Must Be "Directed To" Abstract Idea

In determining whether a claim is *directed to* an abstract idea for purposes of the *Alice* first step, the claims must be "considered **in light of the specification**, based on whether 'their character as a whole is directed to excluded subject matter." (Emphasis added). *Enfish, LLC v. Microsoft*, *supra* at 1334. Specifically, the first step of the *Alice* inquiry is "determining whether the focus of the claims, **in light of the specification**, is on a specific asserted improvement in … [a] particular technological area." (Emphasis added). *Enfish, LLC v. Microsoft*, *supra* at 1335. When considering claims purportedly directed to "an improvement in computer functionality", this Court is to "ask whether the focus of the claims is on the specific asserted improvement in computer capabilities … or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft*, *supra* at 1335-56.

In summary, *Enfish* makes clear that claims directed to specific improvements to underlying computer-related technology, whether implemented in software or hardware, may constitute patent-eligible subject matter under the first step of the *Alice* analysis.  In these cases, there is no need for further evaluation of the claim under the second step of the *Alice* analysis to determine whether the claim adds significantly more than an abstract idea.  In evaluating claims under the first step, *Enfish* emphasizes the need to focus on what is actually recited in the claims, and described in the specification.  Finally, description of benefits provided in the specification may play an important role in establishing that the claimed subject matter constitutes a specific

improvement in the way a computer works, in contrast to mere use of a general purpose computer as a tool to perform an otherwise conventional economic or business practice.

## 2.   *McRO, Inc. v. Bandai Namco Games America Inc.*

In *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299 (Fed. Cir. 2016), the Federal Circuit concluded that the claimed methods of automatic lip synchronization and facial expression animation using computer-implemented rules were not directed to an abstract idea. *McRO, Inc. v. Bandai Namco Games America Inc.*, *supra* at 1316. The basis for the court's decision was that the claims were directed to an improvement in computer animation and thus did not recite an abstract idea. *McRO, Inc. v. Bandai Namco Games America Inc.*, *supra* at 1314-15. The court relied on the specification's explanation of how the claimed rules enabled the automation of specific animation tasks that previously could not be automated. *McRO, Inc. v. Bandai Namco Games America Inc.*, *supra* at 1313. The court further indicated that the incorporation of the particular claimed rules in computer animation "improved [the] existing technological process", rather than merely used the computer as a "tool to automate conventional activity." *McRO, Inc. v. Bandai Namco Games America Inc.*, *supra* at 1314. The court also noted that the claims at issue described a specific way (use of particular rules to set morph weights and transitions through phonemes) to solve the problem of producing accurate and realistic lip synchronization and facial expressions in animated characters and thus were not directed to an abstract idea. *McRO, Inc. v. Bandai Namco Games America Inc.*, *supra* at 1313. This aspect of the court's decision is especially relevant to the instant case involving the '425 Patent in which said primary improvement disclosed in the specification and claimed in the claims of the '425 Patent involved activating the hyperlinking step and means and **automating**, via the hyperlinking printing, the printing step and means. *See* '425 Patent at Claims 22 and 24.

3. ***Visual Memory, LLC v. NVIDIA Corp.***

On August 15, 2017, the Federal Circuit issued a decision in *Visual Memory, LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017), concluding that claims to an enhanced computer memory system were not directed to an abstract idea. The basis for the court's decision was that the claims focused on a specific asserted improvement in computer capabilities (the use of programmable operational characteristics that are configurable based on the type of processor) and thus were not directed to the abstract idea of categorical data storage. *Visual Memory, LLC v. NVIDIA Corp.*, *supra* at 1259-60. The court also relied on the specification's explanation of the multiple benefits flowing from the claimed memory system such as the claimed system's outperformance of prior art memory systems and the disclosure of how the claimed system can be used with different types of processors without a tradeoff in processor performance. *Visual Memory, LLC v. NVIDIA Corp.*, *supra* at 1259.

In summary, the '425 Patent comprises a computer-implemented patent disclosing and claiming a specific improvement over identified prior art systems in a particular technological area involving computer capabilities using a PrintWriter. As such, consistent with said three cases cited above, the '425 Patent is directed to patent-eligible subject matter under the *Alice* inquiry at step one. Accordingly, the *Alice* inquiry ends here at step one without the need for this Court to even consider the **inventive concept** of the '425 Patent in step two of the *Alice* inquiry.

Pursuant to 35 U.S.C. § 282, patents are presumed valid and the burden of proof for establishing invalidity rests on the party asserting such invalidity. Defendant Comcast has failed to prove its patent invalidity defense by the requisite clear and convincing evidence to overcome the presumption of validity. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 131 S. Ct. 2238, 2244-53, 180 L.Ed.2d 131 (2011). Accord. *SkillSurvey, Inc. v. Checkster LLC*, *supra* at 255.

WHEREFORE, Progme requests this Honorable Court deny Doc. 50, Comcast Cable Communications, LLC's Motion to Dismiss Under Rule 12(b)(6) of the Federal Rules of Civil Procedure Because the Patent Claims are Directed to Unpatentable Subject Matter, filed in the above-captioned matter on 2/15/18.

March 1, 2018

Respectfully submitted,

/s/ David A. Reams
David A. Reams, *Pro Hac Vice*
Law Office of David A. Reams, P.C.
208 Clair Hill Drive
Rochester Hills, MI 48309
248-376-2840
Lead Counsel for Progme Corporation

/s/ Frank A. Mazzeo
Ryder, Lu Mazzeo & Konieczny LLC
808 Bethlehem Pike, Ste. 200
Colmar, Pennsylvania 18915
215-997-0248
Local Counsel for Progme Corporation

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 1st day of March, 2018, I electronically filed the foregoing paper with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.

<div style="margin-left: 50%;">

Signed,

<u>/s/ David A. Reams</u>

</div>